## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 45290

| | | |
|---|---|---|
| **VANCE E. THUMM,** | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | **Boise, November 2018 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: August 22, 2019** |
| | ) | |
| **STATE OF IDAHO,** | ) | **Karel A. Lehrman** |
| | ) | |
| **Respondent.** | ) | **SUBSTITUTE OPINION. THE OPINION** |
| ——————————————————— | ) | **FILED ON FEBRUARY 22, 2019 IS** |
| | | **HEREBY WITHDRAWN.** |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Samuel A. Hoagland, District Judge.

The district court's grant of summary disposition is <u>affirmed</u>.

Silvey Law Offices Ltd., Boise, attorneys for appellant. Greg S. Silvey argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Mark W. Olson argued.

———————————————

BEVAN, Justice

### I. NATURE OF THE CASE

In 2009, a jury convicted Vance Thumm of aggravated battery or aiding and abetting aggravated battery and of being a persistent violator of the law. Thumm pursued a direct appeal, but was unsuccessful. In 2013, through counsel, Thumm petitioned for post-conviction relief. The State responded by filing a motion for summary disposition. The district court eventually granted the State's motion and dismissed the post-conviction petition. Thumm now appeals alleging: (1) ineffective assistance of counsel at trial, sentencing, and on appeal; (2) a *Brady* violation; (3) prosecutorial misconduct; and (4) cumulative error. We affirm the district court's grant of summary disposition.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Vance Thumm, Paris Davis, Frankie Hughes, Jeremy Steinmetz, victim Deven Ohls, and several other people attended an early morning party in a motel room rented by Thumm. At some point during the party Ohls was attacked, allegedly by both Hughes and Thumm. Hughes later

1

admitted to stabbing Ohls in the buttock. After the prolonged attack, Ohls suffered significant bleeding, a concussion, two black eyes, a complex laceration to the lip, a fractured nose, and the stab wound.

The State charged Thumm with aggravated battery under Idaho Code section 18-907 and with being a persistent violator under Idaho Code section 19-2514. Three others, including Thumm's girlfriend, Davis, were also charged in connection to the altercation. Davis was charged with one count of solicitation or destruction, alteration or concealment of evidence under Idaho Code section 18-2603, and one count of accessory to aggravated battery under Idaho Code section 18-907. Following a motion by the State, Thumm's case was joined with that of Hughes and Davis, though Thumm was ultimately tried in a joint trial with only Davis.

Thumm was originally represented by Nick Wollen, a public defender at the Ada County Public Defender's Office. In September 2009, Thumm became dissatisfied with Wollen and retained a private attorney, Virginia Bond, less than two months before the trial. After a four-day trial, the jury found Thumm guilty of aggravated battery and of being a persistent violator of the law.

Following trial, Thumm became dissatisfied with Bond as well, specifically for failing to provide discovery, so Bond withdrew as counsel. The court then appointed Anthony Geddes as Thumm's conflict counsel. On March 10, 2010, the court sentenced Thumm to a unified term of forty years, fifteen of which were determinate.

Thumm timely appealed from the district court's judgment of conviction and also filed a motion for reconsideration of sentence, which was denied by the district court. On August 19, 2013, Thumm, through counsel, petitioned for post-conviction relief. More than three years later the State filed an answer to the petition, a motion for summary disposition, and a motion to take judicial notice of the jury trial and preliminary hearing transcripts and the jury instructions. Thumm's counsel then filed an amended post-conviction petition, to which the State responded. Along with the response, the State also filed another motion for summary disposition, which was granted by the district court on June 16, 2017. Thumm now appeals.

### III. ISSUES ON APPEAL

1.     Did the district court err in summarily dismissing Thumm's ineffective assistance of counsel claims?

2.     Did the district court err in summarily dismissing Thumm's *Brady* claim?

2

**3.**     Did the district court err in summarily dismissing Thumm's prosecutorial misconduct claims?

**4.**     Did Thumm demonstrate cumulative error?

## IV. STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). Like the plaintiff in any civil action, the applicant must prove, by a preponderance of the evidence, the allegations upon which the request is based. *State v. Abdullah*, 158 Idaho 386, 417, 348 P.3d 1, 32 (2015) (citing I.C. § 19-4907). The application for post-conviction relief differs from a complaint in an ordinary civil action in that it must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *Id.* (citing *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002)). The application must present admissible evidence supporting its allegations, or it will be subject to dismissal. I.C. § 19-4903.

Idaho Code section 19-4906 authorizes summary dismissal of a post-conviction petition. Summary dismissal of an application is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. "Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested." *Yakovac*, 145 Idaho at 444, 180 P.3d at 483.

> On review of a dismissal of a post-conviction relief application without an evidentiary hearing, the Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.

*Id.* Inferences should be liberally construed in favor of the petitioner. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). Constitutional issues are purely questions of law over which this Court exercises free review. *Abdullah*, 158 Idaho at 417, 348 P.3d at 32. "Essentially, the task of this Court 'is to determine whether the appellant has alleged facts in his petition that if true, would entitle him to relief.'" *Charboneau*, 140 Idaho at 792, 102 P.3d at 1111 (quoting *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990)).

## V. ANALYSIS

One who has been convicted of, or sentenced for a crime may petition for post-conviction relief if any one of several statutorily defined conditions is met. I.C. § 19-4901(a). Among those conditions, and relevant here, are whether the conviction or sentence violated the United States constitution or the Idaho constitution, or if the conviction or sentence is subject "to a collateral

3

attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy . . . ." I.C. § 19-4901(a)(1), (a)(7).

> This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of an appeal from the sentence or conviction. Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition or otherwise, that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

I.C. § 19-4901(b).

## A.      Ineffective Assistance of Counsel

A majority of Thumm's claims involve allegations of ineffective assistance of counsel. Claims for ineffective assistance of counsel are properly raised in a post-conviction setting. *See Matthews v. State*, 122 Idaho 801, 806, 839 P.2d 1215, 1220 (1992). The right to counsel in criminal actions is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho Constitution. *Abdullah*, 158 Idaho at 417, 348 P.3d at 33 (citing *Murray v. State*, 156 Idaho 159, 164, 321 P.3d 709, 714 (2014)). This Court employs the *Strickland* two-prong test to determine whether a defendant in a criminal case received effective assistance of counsel. *Mitchell v. State*, 132 Idaho 274, 277, 971 P.2d 727, 730 (1998) (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, an applicant for post-conviction relief must demonstrate: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 669. These prongs are known more precisely as (1) deficient performance and (2) resulting prejudice. *Id.* at 687.

When evaluating a claim for ineffective assistance of counsel, "this Court does not second-guess strategic and tactical decisions . . . unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review." *Yakovac*, 145 Idaho at 444, 180 P.3d at 483 (citing *Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000)). There is a strong presumption that counsel's performance was within the range of acceptability, particularly as to things like defense counsel's choice of witnesses, manner of cross-examination, and lack of objections to testimony, which are generally

4

considered to fall within the realm of tactical or strategic decisions. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994).

> **1.** **Improper Joinder Claims.**

Thumm argues that his trial counsel were ineffective for failing to oppose the State's motion for joinder of Thumm's and Davis's cases (claim as to Wollen), or, alternatively, for failing to move to sever the cases (claim as to Bond). Thumm maintains that had counsel done so, either the objection or the motion would have been successful, since joinder with Davis's case violated the rule set forth in *Bruton v. United States*, 391 U.S. 123 (1970).

Joinder of two or more defendants is proper if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." I.C.R. 8(b). Actions properly joined under Idaho Criminal Rule 8(b) may be severed under Idaho Criminal Rule 14, if conducting a joint trial would be prejudicial. *State v. Gamble*, 146 Idaho 331, 337, 193 P.3d 878, 884 (Ct. App. 2008); I.C.R. 14. As provided by Idaho Criminal Rule 14, a "court may order the state to elect between counts, grant separate trials of counts, grant severance of defendants, or provide whatever other relief justice requires."

The district court found that both Thumm and Davis participated in the same series of acts constituting the offenses charged: Thumm committed a battery and Davis encouraged Thumm to conceal the evidence by destroying bloody clothing. These findings are supported by the record. Thus, Thumm's charges were related enough to Davis's charges to warrant joinder. *See States v. Estes*, 111 Idaho 423, 427, 725 P.2d 128, 132 (1986) (holding that joinder of offenses was proper because they were part of one continuing action—the individual offenses were not committed at different times, in different places, nor with different actors or circumstances).

A criminal defendant bears the burden to show prejudice in making a motion to sever under Idaho Criminal Rule 14. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985). Such motions are committed to the sound discretion of the trial court. *Id.*; I.C.R. 14. "When considering whether an attorney's failure to file a motion . . . constitutes deficient performance, the Court examines the probability of success of such a motion in order to determine whether counsel's decision was within the wide range of permissible discretion and trial strategy." *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006) (internal citation omitted); *see also State v. Porter*, 130 Idaho 772, 794, 948 P.2d 127, 149 (1997); *State v. Dunlap*, 155 Idaho

345, 385, 313 P.3d 1, 41 (2013). However, "'[w]here the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the [*Strickland*] test.'" *Dunlap*, 155 Idaho at 385, 313 P.3d at 41 (2013) (quoting *State v. Payne,* 146 Idaho 548, 562, 199 P.3d 123, 137 (2008)).

Two witnesses at trial, Jeremy Steinmetz and another witness involved in the fight, Frankie Hughes, testified that directly after the attack in the hotel room, co-defendant Davis told Thumm he was "going to prison." Steinmetz also testified that a few minutes later, Davis was "still freaking out" and told both Hughes and Thumm to burn the clothing they were wearing because it could be used as evidence against them. Based on our analysis below, we conclude that a motion to sever would not have been granted, and Bond was therefore not ineffective as to this issue. For similar reasons, Wollen was not ineffective either.

The district court dismissed Thumm's petition as to the joinder issue on two separate grounds. First, the court found that Davis's statements were not hearsay and therefore the statements would have been admitted against Thumm in a separate trial. As such, Thumm suffered no prejudice having those statements admitted in a joint trial. Second, the court found that there was no violation of the principles announced in *Bruton*, since Davis's statements were non-testimonial.

Addressing the hearsay question first, we hold that the district court was correct. The testimony Hughes and Steinmetz presented regarding Davis's statements would have been admissible at a separate trial based on exceptions to the hearsay rule. Thus, there is no compelling evidence of a prejudicial result or that Thumm was denied a fair trial. Thumm's trial counsel was not ineffective for failing to object to joinder or for failing to move for severance.

Steinmetz and Hughes both testified that after the altercation in the hotel room, Davis told Thumm he was "going to prison." This testimony was admitted to prove that Thumm's co-defendant, Davis, had knowledge that Thumm committed a felony, a necessary element of her charge of accessory to the commission of a felony. Hughes also testified that Davis told Thumm and Hughes, directly after the attack, that they should burn their clothes, presumably because of the blood on them.

Thumm argues that Hughes and Steinmetz's testimony constituted hearsay, and had the court not held that joinder was proper, the testimony would have been inadmissible. Thumm

claims that neither statement would have been admissible as excited utterances in a separate trial, because witnesses testified that Davis was not excited when she made the statements. Thumm cites first to the testimony of Steinmetz in the trial transcript to show that Davis was not excited:

> Q: How do you know that the individuals in the backseat heard [Davis's] statement?
>
> A: She was speaking kind of loud.
>
> Q: Okay. She excited?
>
> A: Not excited. Freaked out about it.

Thumm then cites to Hughes' testimony to suggest Davis was not excited:

> Q: Did [Davis] appear excited?
>
> A: No.
>
> Q: Okay. Did she appear animated?
>
> A: What's that?
>
> Q: Was she speaking loudly?
>
> A: Yes.

Thumm argues that since Bond did not object during either witness's testimony, no inquiry was made into the distinctions between being excited, animated, or "freaking out." He argues that Davis was logical and calculated when she made her statements, so these statements would not have been admitted as excited utterances had an objection been made.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. I.R.E. 801(c). Hearsay is inadmissible except in those circumstances provided by the Idaho Rules of Evidence. I.R.E. 802. An excited utterance is an exception to the hearsay rule and is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." I.R.E. 803(2). There are two requirements of an excited utterance:

> "(1) an occurrence or event sufficiently startling to render inoperative the normal reflective thought process of an observer; and (2) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought."

*State v. Thorngren*, 149 Idaho 729, 732, 240 P.3d 575, 578 (2010) (quoting *State v. Field*, 144 Idaho 559, 568, 165 P.3d 273, 282 (2007)).

It is critical to our inquiry regarding the allegedly offending statements that Davis was speaking very loudly, and was laboring under the effects of witnessing the melee when she made

her statements. Hughes and Steinmetz both testified that Davis was animated and crying when she told Thumm he was going to prison and needed to burn his clothes.

It is not disputed that Steinmetz and Hughes' testimony about Davis's statements qualify as hearsay statements. Yet despite Thumm's contention that witnesses were unable to identify Davis as being "excited," the statements she made fall under the excited utterance exception. As noted by the district court, both Steinmetz and Hughes testified that Davis was speaking in a stressed or animated state when in the car. Just before Davis made the statement about prison and burning clothes, she had witnessed a severe beating, an event sufficiently startling to "render inoperative the normal reflective thought process." She made the allegedly offending statements almost immediately following the altercation, with little time to reflect on what had just happened. The testimony Thumm highlights shows only that the witnesses misunderstood the word "excited" as referring only to positive states of emotion.

The focus of our inquiry is not whether a witness' reaction fits neatly within the lexicon of the word "excited." The focus must be whether the criteria of Rule 803(2) are established: (1) witnessing a startling event, coupled with (2) a spontaneous statement made under the stress of the moment without taking time for reflective thought. Weighed against this standard, we hold that Davis's statements qualify as excited utterances.

Since the statements were properly admitted in the joint trial, Thumm cannot rely on the premise that had the trials been separate, the statements would not have been admissible against him. The district court correctly found that the statements would have been admissible in a separate trial and as such, Bond's failure to move to sever Thumm's case for trial cannot be said to have prejudiced Thumm, even if failing to make such a motion was ineffective.

Thumm also argues that the court erred in concluding that Hughes's testimony about Davis's statement to burn the clothes was also admissible as a statement against interest, as it inculpated Hughes. Thumm concedes that the statement about burning the clothes implicated Hughes, but maintains it cannot be considered a statement against interest since Thumm is not the declarant of the statement. The district court found that the statement about burning the clothes also qualified as a statement against interest, but only for Hughes. We will not address the merits of this issue. Since the trial court did not err in admitting the statements as excited utterances, the fact that they may or may not have been statements against interest is

8

inconsequential. *See State v. Flores*, 162 Idaho 298, 302 n. 2, 396 P.3d 1180, 1184 n.2 (2017) ("Because we affirm on [one] basis, we need not reach [the second] argument….").

Thumm also argues that *Bruton* should have barred the joinder or required severance in his case. The State counters that *Crawford v. Washington*, 541 U.S. 36 (2004) has abrogated the *Bruton* rule in cases where non-testimonial statements are admitted against a defendant. The district court agreed with the State's argument, relying upon several non-Idaho cases in finding that *Bruton* does not preclude the admission of non-testimonial hearsay statements by a co-defendant. *See U.S. v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013); *U.S. v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013); *State v. Gurule*, 303 P.3d 838, 849 (N.M. 2013).

Even though we have yet-to-rule on the efficacy of the *Bruton* rule after *Crawford*, we decline to reach this issue on the record presented in this post-conviction case. We have affirmed the district court based on the hearsay analysis set forth above. We will leave for another day whether *Crawford v. Washington,* 541 U.S. 36 (2004) and its Confrontation Clause analysis affects the *Bruton* rule in Idaho.

Finally, Thumm argues that he suffered prejudice by having to split peremptory challenges with Davis. This claim is unsupported by the record. Thumm has failed to address this claim in detail and thus he failed to establish any prejudice under *Strickland's* second prong regarding the make-up of the jury. This claim therefore fails.

## 2. Additional alleged errors by trial counsel

*a. Lack of preparation.*

Several lack of preparation claims were alleged in the original petition for post-conviction relief summarily dismissed by the district court: (a) failing to timely disclose an expert witness who could have provided exculpatory evidence; (b) missing the deadline to submit redacted tapes; (c) failing timely to file a motion to suppress lineups; (d) failing to meet, communicate, prepare, or provide discovery to Thumm; and (e) failing to prepare adequately for Helen Fischer's testimony. Even with this litany of claims stated, Thumm noted:

> Given the number of claims and length of the materials and rulings, [Thumm] will focus on the most important claims. However, [Thumm] is expressly appealing the dismissal of the entire petition and all claims.

In his Appellant's Brief, Thumm raised only the issues of failure to provide discovery and failure to timely move to suppress lineups, so only these issues will be considered here. *See*

*Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1132, 1138 (2010) ("[I]f the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court.").

Thumm argues in his appellate briefs that both Wollen and Bond provided ineffective assistance of counsel in two ways: (1) by failing to provide discovery to Thumm and (2) by failing to timely move to suppress lineups. Each of these claims will be discussed in turn.

        i.    *Failure to provide discovery.*

While Thumm's criminal case was pending, the State and Bond stipulated to a protective order that precluded Bond from sharing certain discovery with Thumm. Thumm claims that Bond's actions were not a strategic decision, because her stipulation prevented anyone from disclosing names of witnesses or physically transferring reports to Thumm. This amounted to ineffective assistance because it created a lack of preparation on Bond's part. Thumm contends that had he received a tardily disclosed fingerprint report through discovery, he would have noticed its exculpatory nature and created a defense strategy based on it.

We first note that Thumm does not address whether the fingerprint report was among the discovery Bond stipulated to not provide to him because of fear that he might retaliate against potential witnesses; however, since the report includes no names of potential witnesses, it is assumed for purposes of our analysis that it was not among the discovery the court precluded Thumm from receiving. In other words, we are assuming that there was nothing to prevent Bond from giving the report to Thumm. This assumption favors Bond and means that Bond's decision to enter into the stipulation is inconsequential to our further analysis of this issue.

This Court must liberally construe Thumm's factual allegations in his favor for purposes of this appeal, and the fingerprint report showed that Thumm's fingerprints were not on some bottles collected at the scene and ostensibly used as weapons. *See* a more detailed discussion regarding the report *infra*, section B. Thus, the argument that Bond's decision not to provide a physical copy of the report to Thumm constituted deficient performance has some merit. Counsel likely should have shared the report with her client.

Even so, Thumm has failed to show that the outcome of his case would have been different had he received this one report, especially given the strength of other evidence against him. As discussed at the hearing on the motion for summary dismissal of the post-conviction petition, the beer bottles were not part of the charging information; Thumm was charged with

10

"stomping, punching, hitting. . .or in the alternative, aiding and abetting the other two that were doing it," and thus had Bond presented testimony that Thumm's fingerprints were not on the bottles it would not have changed the outcome of the case. In order to establish sufficient prejudice to reverse the district court Thumm must establish a reasonable probability that, had Bond provided the report to Thumm, and then acted upon the report in some unspecified fashion, the result would have been different. "A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Thumm has failed to establish that reasonable probability here and his claim thus fails on that basis.

ii. *Failure to move to suppress lineups*.

Thumm also argues that Bond was ineffective for failing to timely file a motion to suppress lineups. Bond actually filed a motion to suppress what Thumm alleges were unduly suggestive lineups – but the motion was filed late in the process – which is no surprise given Bond's late arrival to the case. Thumm asserts that Bond should have argued more strenuously than she did that the lineups should have been suppressed. This claim fails because Bond did raise the issue and argued the matter, which the trial court overruled. Therefore, we conclude that Thumm has presented no convincing evidence that Bond was ineffective in this regard or that he might not have been convicted but for what he characterizes as this mistake.

On the first day of trial, Bond acknowledged she filed a late motion to suppress the photo lineups; however, the court had already informed counsel that she could make an objection when the evidence was presented at trial. When the issue arose, Bond objected and the court overruled her objection. That the trial court considered the merits of the motion to suppress and denied it establishes that Bond was aware of this issue and took appropriate procedural steps to address it. Thumm has failed to establish that Bond was ineffective as to suppressing the lineups.

Moreover, the objection itself is evidence that Bond was aware of the legal implications of the lineups, although her motion to suppress was untimely. Assuming that a timely motion to suppress would have resulted in a different outcome than the trial court's ruling during trial, Thumm fails to establish that the lack of photographic lineup would have changed the result. The district court correctly denied this ineffective assistance of counsel claim.

11

*b. Failure to renew objection about 404(b) evidence.*

Thumm argues that Bond was ineffective for failing to renew an objection that was raised on the first day of trial, after the prosecutor sought to introduce evidence, pursuant to Idaho Rule of Evidence 404(b), that four days after the fight, Thumm and Davis arrived at Steinmetz's residence and Thumm stated to Steinmetz, "Don't say nothing." Bond objected during trial, claiming the statement was prejudicial to Thumm, but the trial court deferred ruling on the issue until a more appropriate time by stating, "At first blush, it would appear to be overly prejudicial. But I can't do a balancing test unless I know all the facts." The prosecutor later advised the court that the State intended to admit the testimony Bond had previously objected to. The State argued that the evidence was "clearly relevant to the charges" and to Thumm's consciousness of guilt and the court declared the statement was admissible. Thumm argues that Bond should have renewed the prior objection about the admission of the statement and that failure to do so prejudiced him at trial.

Bond preserved her objection about the nature of the evidence by stating her objection at the outset of trial. Failing to reassert the objection could be ineffective, for failing to remind the court of the prior objection, but it could also have simply been a matter of strategy. Given the highly deferential nature of our review of counsel's decisions and conduct of the trial, we find no deficiencies in Bond's performance as to this evidence. When analyzing a claim for ineffective assistance of counsel, counsel's manner of cross-examination and objections to testimony (or lack thereof) are strongly presumed acceptable and within the realm of tactical decisions. *See Giles*, 125 Idaho at 924, 877 P.2d at 368. Thumm provides no evidence that Bond's decision to not object repeatedly to Steinmetz's testimony that Thumm told him, "Don't say nothing," was deficient.

*c. Failure to impeach Steinmetz's testimony.*

Thumm also alleges that Bond was ineffective for failing to impeach Steinmetz during trial with evidence about conflicting testimony that Steinmetz gave about his reason(s) for not identifying Thumm in a photo lineup. During trial, Steinmetz testified that he declined to identify Thumm during a police photo lineup because he was afraid of Thumm. Thumm claims that Bond should have been more aggressive in her cross-examination of Steinmetz with his conflicting testimony in the preliminary hearing, where Steinmetz testified that he chose not to identify Thumm during the lineup because he was trying to protect Thumm, not because of fear of

12

retaliation. Thumm alleges that this failure also allowed the prosecutor to comment, in his closing argument, that Steinmetz was afraid of Thumm, also prejudicing Thumm in the eyes of the jurors.

The State argues that Bond's decision to not delve into specifics about Steinmetz's fear of Thumm on cross-examination was tactical and made sense because of the uncertainty of Steinmetz's response. Since Bond later cross-examined Steinmetz on a different topic, based on the preliminary hearing transcript, the State argues her decision not to impeach Steinmetz based on his potential fear of Thumm was not based on an objective shortcoming, such as not having reviewed the transcript at all. It is possible that had Bond sought to impeach Steinmetz, Steinmetz would have renewed his earlier claim that he was too afraid of Thumm to identify him previously. Given that this Court will not second-guess strategic decisions, we hold that this claim of ineffective assistance of counsel also fails.

*d. Failure to impeach Frankie Hughes.*

Thumm alleges that Bond was ineffective because she failed to impeach witness Hughes based on the long prison sentence he was facing for his role in the attack (maximum of thirty years), thus motivating him to provide "biased testimony against [Thumm]." Thumm argues that his co-counsel's questioning of Hughes about Hughes's cooperation with the police, potentially getting him a sentence of probation is insufficient and the jury should have been alerted that Hughes was facing thirty years in prison, which would motivate him to lie.

The State notes that Bond cross-examined Hughes on: (1) his interview with police in which officers told him they would speak to the prosecutor about Hughes getting probation; and (2) the fact that, despite Hughes's testimony that he was not involved in the attack on the victim, he was charged with two counts of aggravated battery, both of which had been bound over by a magistrate judge. The State also refers to Bond's closing argument, where she specifically mentioned the battery charges against Hughes, arguing that Hughes had a lot to gain by "pointing the finger" at Thumm.

This claim is thus disproven by the record. While it is true that Bond did not specifically ask about a 30-year sentence, the jury was aware of the potential for prison Hughes faced and that he had a strong motivation to shift blame to Thumm for the incident. Davis's attorney elicited the following testimony at trial:

Q: Mr. Hughes, you have said that when you talked with the police in May, they indicated to you that if you cooperated they would put in a good word with the prosecutor, maybe get you probation[;] correct?

A: Yes.

Q: They told you that if you cooperated, gave them information that they were seeking, that they might seek to get your bond lowered; correct?

A: They said they would say—like they said they can take that into consideration. They didn't say it was going to happen or nothing.

Q: So, despite the fact that you tell us today that you weren't involved in the aggravated battery on [Ohls], a Magistrate Judge heard the evidence earlier on in the case and found probable cause to believe that you were involved in the aggravated battery that took place on [Ohls]; isn't that true?

A: Yes.

Based on the jury's awareness that Hughes had motivation to lie, Thumm has not offered enough evidence to show that Bond's decision not to impeach Hughes over his potential sentence was anything but tactical. The district court found that Bond's decisions in this regard were strategic and not based on any shortcomings capable of objective review. At a minimum, the court found, there is no genuine issue of material fact over the prejudice prong of *Strickland*. We agree that this claim for ineffective assistance of counsel fails.

> *e.  Failure to renew objection of Davis's use of "prison".*

Thumm alleges ineffective assistance of counsel because Bond objected during the preliminary hearing to Davis's statement, "Vance you are going to prison," but did not renew her objection during the trial. Thumm claims that Bond's initial objection proves that she was aware the statement was an improper legal conclusion which would prejudice Thumm to the jury, so her failure to renew the objection was deficient performance. Thumm maintains that he was prejudiced by the jurors hearing the word "prison," because another witness admitted to the jury that one cannot go to prison for a misdemeanor.

The State argues that Bond objected to the statement, before the start of trial, because Davis is not a legal expert, thus her opinion or understanding of whether Thumm was going to prison was not relevant. Despite Bond's objection, the district court ruled Davis's statement was admissible.

Despite Thumm's contention on appeal, counsel objected to this statement and the court tried to mitigate the risk of its admission being too prejudicial by ensuring the statement did not

get misconstrued as, "you're going *back* to prison." This brief reference to "prison" was not prejudicial enough to overwhelm all the admissible evidence and it cannot be said to have contributed to the verdict in any meaningful way. There is no evidence that had the objection been made, it would have been sustained, since as discussed above, the statement was admissible as an excited utterance. As a result, Thumm fails to show that Bond's performance was deficient or that he was prejudiced thereby.

　　*f.　Failure to oppose proposed impeachment of witnesses by gang membership under* Abel.

The trial court ruled that evidence showing that Davis, Thumm, and another associate are either members or associates of the Severely Violent Criminal prison street gang, would be admissible under *United States v. Abel*. 469 U.S. 45 (1984). However, the court noted the evidence would only be admissible to impeach on credibility and the possibility that it could show a common scheme, plan, or identity for the reason the attack may have ensued. Bond did not object to this ruling and conceded that the evidence could be used for impeachment purposes. Thumm claims that Bond should have challenged this ruling as a violation of his Fifth, Sixth, and Fourteenth Amendment rights to testify and present a complete defense. Thumm cites *Rock v. Arkansas*, 483 U.S. 44 (1987), to support this contention.

Thumm argues that Bond should have argued that *Abel* did not apply to potential witnesses Ariel Carpenter and Chris Smith. Based solely on police reports, Thumm claims that Carpenter was interviewed during investigation and told detectives that when the fight broke out, she, Thumm, and Davis all ran from the room. Thumm argues that Bond's failure to object to the *Abel* ruling prevented Carpenter from being able to testify about her version of the events, which prevented Thumm from being able to present a complete defense by choosing his own witnesses, thus affecting the outcome of the trial.

Thumm also maintains that impeachment of Smith under *Abel* would not have been allowed because the State would not have been able to establish that both Thumm and Smith shared membership in the *same* gang, as required by the *Abel* ruling. Thumm claims Smith would have told the court that Thumm was the wrong suspect, which could have been corroborated by a previous police report.

Thumm acknowledges that the Court of Appeals already dealt with the *Abel* claim and ruled against him; however, he maintains that if counsel had made some argument at trial on the

prejudicial effect of the gang membership evidence, there is a reasonable probability the ruling would have gone the other way and Carpenter and Smith would have been allowed to testify on his behalf. He also claims that the court's ruling only addresses the matter with regard to evidentiary issues, but ignores the constitutional ramifications, i.e., violation of Thumm's right to present a complete defense and to choose his witnesses.

In *Abel*, the United States Supreme Court held that

> [a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias.

469 U.S. at 52. In that case, the Court determined that the lower court had not abused its discretion in admitting a witness's description of the gang and its tenets since "the *type* of organization in which a witness and a party share membership may be relevant to show bias." *Id.* at 54 (emphasis in original). The Court reasoned that if the organization is loosely knit, then the inference of bias arising from the common membership might be small or nonexistent and thus less probative, but specifically noted the wide discretion a district court has in determining the admissibility of evidence. *Id.*

Here, as the district court noted, there are several reasons this claim fails. First, the Court of Appeals was already presented with the identical issue on direct appeal and found that the trial court properly determined that the State could impeach witnesses who were in any gang with evidence of their membership. *State v. Thumm*, 153 Idaho 533, 540, 285 P.3d 348, 355 (2012). Second, Thumm did not provide affidavits from Smith or Carpenter to show that either witness would have testified in accordance with the exculpatory statements. Thumm points only to the police report. In relying solely on third-hand reports, Thumm has failed to present the proof necessary to establish this claim. *See Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011) ("A claim for post-conviction relief will be subject to summary dismissal if the applicant has not presented evidence making a prima facie case as to each essential element of the claims upon which the appellant bears the burden of proof.") Finally, Thumm has failed to demonstrate that testimony from the desired witnesses would have affected the outcome of his trial, which alone is fatal to a claim for ineffective assistance of counsel. The district court found that at a minimum, the prejudice prong of *Strickland* is not satisfied here. We agree. This claim for ineffective assistance of counsel fails.

> g. *Failure to impeach detectives with report of photo lineup*.

16

Thumm's arguments over the testimony of the detectives involved in the case are threefold. First, Thumm contends that he was denied effective assistance by Bond because she failed to recall Detective Leavitt to discuss testimony about a photo lineup after Leavitt claimed he could not recall, without refreshing his memory with a written report, whether Detective Holland had shown Ohls and his girlfriend (another witness to the attack) a photo lineup. Rather than showing him the report at that time, Bond stated, "[t]hat's kind of important, so I will retain you . . . on your subpoena and let you come back, so we can talk about that later." Thumm alleges this amounted to ineffective assistance of counsel because Leavitt was never recalled and the lineup was never reconsidered.

Second, Thumm alleges that Bond had another opportunity to discuss the lineup when Holland testified, but failed to re-examine whether a lineup was shown to a witness a second time. Thumm claims discussion of the lineup was critical and the report should have been used to refresh both detectives, since a lineup was, in fact, presented to Ohls and his girlfriend, Everhart and both failed to identify Thumm.

Third, Thumm argues that Bond was ineffective for failing to impeach Holland about lying to Hughes about the fingerprints on the bottles used as weapons. During recross-examination, Bond asked Leavitt:

> Isn't it true that in your interview on 5/1 of 2009 you told Frankie Hughes that you had fingerprints and DNA on a bottle that could connect him with hitting [ ] Everhart?

Leavitt testified that he did not recall making that statement and the court sustained a hearsay objection on whether Holland may have so stated. Thumm alleges that Bond's failure to ask Holland the same question, during his later testimony, coupled with Bond's possession of the police report from the interview in question, amounted to deficient performance. Thumm claims that Bond should have impeached Holland about the comment to Hughes, as the fingerprint results had not yet been reported, making it impossible for Holland to know whose fingerprints were on the weaponized bottles.

We agree with the district court's conclusion on this claim as well. Thumm fails to identify how Bond was deficient for failing to "follow-up." A lawyer's choices of whom to call as a witness and the manner of questioning to be performed fall within the presumptively strategic decisions of counsel. Rather than provide evidence that the outcome of the trial might have been different had Bond delved deeper into the potentially deceptive tactics of the

17

detectives, he makes one conclusory statement that retained counsel forwent "even more chances to show the jury that the state's witnesses lie, even the police." Again, at a minimum, Thumm has failed to show that the prejudice prong of *Strickland* was met and cannot overcome the strong presumption of effective assistance this Court must apply.

> *h.   Sentencing Counsel.*

Thumm makes no argument about sentencing counsel's specific deficiencies, other than a passing statement in a heading in his brief. Thus, we will not address this claim. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).

### 3.    Appellate Counsel

Thumm claims that appellate counsel provided ineffective assistance on appeal by failing to raise the *Bruton*, *Abel*, and *Brady* issues, in addition to several instances of prosecutorial misconduct.

> To demonstrate deficient performance of appellate counsel for failure to raise a claim on appeal, the defendant must show that counsel made an objectively unreasonable decision to omit the claim. Courts have recognized that appellate counsel may fail to raise an issue on appeal because counsel "foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Appellate counsel is not deficient for using reasonable professional judgment in deciding the most promising issues for appellate review and counsel is not required to raise issues which are reasonable considered to be meritless. Indeed, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."

*Dunlap v. State*, 159 Idaho 280, 296–97, 360 P.3d 289, 305–06 (2015) (internal citations omitted). The United States Supreme Court has stated that when an ineffective assistance claim is based on failure to raise an issue on appeal, that only "when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted). The question for this Court is "whether, but for appellate counsel's errors, a reasonable probability exists that the defendant would have prevailed on appeal." *Dunlap*, 159 Idaho at 297, 360 P.3d at 306.

Here, had appellate counsel raised *Bruton, Brady, Abel,* or prosecutorial misconduct claims on appeal, there is no evidence that any would have been successful and Thumm provides no adequate argument otherwise. As the district court held, even if Thumm were able to

demonstrate that counsel were deficient in this regard, Thumm was not prejudiced. The issues raised likely would have failed on appeal for the same reasons that they fail here.

As we have noted, the Court of Appeals addressed the *Abel* issue on direct appeal and that determination shows that appellate counsel raised the issue already. As to the *Brady* claim, post-conviction petitions are an appropriate time to raise such a claim, so failure to do so in Thumm's direct appeal did not prejudice Thumm in any way; the claim is being considered on appeal now, as it was in the district court below.

As to the prosecutorial misconduct issues, Appellate counsel raised three issues in that regard: (1) improperly appealing to the jury's passions and prejudices; (2) misstating the reasonable doubt standard; and (3) using Thumm's pre-Miranda silence to imply Thumm's guilt. Brief of Appellant, *State v. Thumm*, 153 Idaho 533, 285 P.3d 348 (2012). Counsel's choice to raise these instances, and not the instances alleged in the post-conviction petition, demonstrates a tactical or strategic decision to winnow what may have appeared to be weaker issues. These types of decisions suggest effective appellate advocacy, especially given the presumption of effectiveness. Even if appellate counsel were deficient in any of the above regards, we agree with the district court and find that Thumm was not prejudiced. This claim for ineffective assistance of appellate counsel also fails.

**B.    *Brady* Fingerprint Report**

Thumm asserts that the state violated *Brady* here by its late disclosure of the fingerprint report. As background, it is important that we reiterate the law in Idaho for establishing a viable *Brady* claim.

> The State has a duty to disclose exculpatory evidence to a defendant. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Specifically, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* Further, "a conviction obtained through use of false evidence, known to be such by representatives of the State," violates the Fourteenth Amendment, as do convictions obtained in proceedings where "the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269 (1959).

*State v. Dunlap*, 155 Idaho 345, 389, 313 P.3d 1, 45 (2013). Beyond a mere duty to disclose, the State has an expanded "duty to include volunteering exculpatory evidence never requested, or

requested only in a general way." *State v. Shackelford*, 150 Idaho 355, 380, 247 P.3d 582, 607 (2010) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

"Proving a *Brady* violation requires a three-part showing: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Dunlap*, 155 Idaho at 389, 313 P.3d at 45 (citations omitted). Prejudice is shown where the "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). It requires a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *see also Shackelford*, 150 Idaho at 380, 247 P.3d at 607 (quoting *Kyles*, 514 U.S. at 434). Thus, evidence is material for purposes of a due process analysis if there is a reasonable probability that disclosure of the undisclosed evidence would have produced a different outcome in the proceeding.

There is no evidence here that the State's prosecutors knowingly or even negligently *suppressed* evidence from the defense. Indeed, the record shows that while the fingerprint report was tendered to defense counsel about a week before trial, it was tendered at the same time the State received the report from the State crime laboratory. Thus, there was no purposeful delay or even negligent delay by the prosecutor leading to the late production of the evidence.

Even so, Thumm, relying on a case from the First Circuit, contends that the late disclosure amounted to a *Brady* violation for which his counsel could not adequately prepare. *See United States v. Ingraldi,* 793 F.2d 408 (1st Cir. 1986). The fingerprint report showed that Thumm was the source of the latent print found on a broken Jose Cuervo Tequila bottle, but that Thumm was excluded as the source of latent prints recovered on a certain Budweiser bottle, broken pieces of a Jose Cuervo Tequila bottle, and an unopened bottle of Olde English 800 Malt Liquor. No latent prints were discovered on several other tested pieces of evidence. Thumm asserts that this report was exculpatory because there was no evidence presented at trial that anyone was struck with the Tequila bottle—the only beverage container upon which Thumm's

20

prints were found—and because Hughes testified at trial that Thumm struck the victim with an Olde English 800 Malt Liquor bottle and a Budweiser bottle—bottles seemingly similar to those on which Thumm was excluded as a source of recovered prints. Thumm maintains that this report was the only physical evidence tying him to the altercation and it impeached the testimony of the State's primary witness, Hughes, who testified that Thumm used both the beer and malt liquor bottle in the attack.

We acknowledge and agree that late disclosure of evidence by the State may, in some cases, amount to a *Brady* violation. As the court held in *Ingraldi*, when the *Brady* issue is one of delayed disclosure, as opposed to nondisclosure, "the test is whether defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." 793 F.2d at 411–12. The Tenth Circuit has recognized that "[i]t would eviscerate the purpose of the *Brady* rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial." *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009). "[T]he belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an 'earlier disclosure would have created a reasonable doubt of guilt.' " *Id*. (quoting *United States v. Young*, 45 F.3d 1405, 1408 (10th Cir. 1955)). The court held further:

> Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.

*Id*. We agree with the rationale of these persuasive cases. Thus, when the State is "dilatory in its compliance with *Brady*," the trial court is given discretion to determine the appropriate remedy to address the State's carelessness.

With that said, "not every delay in disclosure of *Brady* material is necessarily prejudicial to the defense." *Id*. at 1056. "To justify imposition of a remedy, the defense must articulate to the district court the reasons why the delay should be regarded as materially prejudicial." *Id*. Courts should, when assessing the materiality of such a late disclosure, consider the significance of the late disclosure in light of the entire record. *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998). When assessing the materiality, "the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to

21

undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (internal citations and quotations omitted).

With these standards in mind, we hold that the district court did not err in dismissing Thumm's *Brady* claim. Thumm's claim fails because the fingerprint report was ultimately disclosed, even if only a week before trial. Bond had enough time to review the report and use its conclusions if she sought to do so; however, she simply objected to the report's admission based on its untimely disclosure and its contents were not referenced again. Bond did not seek a continuance or another "appropriate remedy," as cataloged by the court in *Burke*.[1] The State then agreed not to use the report in its case-in-chief.

Under such circumstances, we cannot conclude, in light of the entire record, that an argument about Thumm's fingerprints appearing or not appearing on certain evidence would have swung the tide in his favor in this multi-faceted case. Indeed, as we noted previously regarding Bond's actions related to the report, the bottles were not part of the State's theory in the case. The information charged Thumm with "stomping, punching, hitting. . .or in the alternative, aiding and abetting the other two that were doing it." While Hughes testified that Thumm used bottles in his assaultive actions against the victim, there is no showing that a more-timely disclosure of the report would have allowed Bond to cross-examine Hughes in such a way to make a difference in the outcome. Even had she called the State crime laboratory analyst to discuss the findings in the report, we conclude that such evidence cannot "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290.

## C.    Prosecutorial Misconduct in Closing Argument

Thumm alleges that the prosecutor violated his due process rights to a fair trial in several ways, six of which Thumm identifies here. Thumm argues that had Bond performed effectively, she would have objected to each of the following instances of prosecutorial misconduct, triggering harmless error review, instead of the requisite fundamental error review. He argues

---

[1] The district court acknowledged that the late disclosure was likely due to belated production of the report by the State crime lab, because of a difficulty with "resources." Given our conclusion that utilization of the report's findings would have made no difference in the outcome of the case, we make no comment at this time about whether a delay attributable to a backlog at the State's crime lab could implicate a *Brady* violation. Even so, counsel has the ability to seek a continuance of the trial, if necessary, to allow time to prepare adequately to present or meet that evidence. Where appropriate, we encourage trial courts to be liberal in the application of their discretion to such situations.

that had this been the case, the outcome of his direct appeal would have been different. The six instances of prosecutorial misconduct alleged in the post-conviction petition are: (1) disparagement of defense counsel and the presented defense; (2) unsupported comments about the victim's fear of Thumm, including a statement that this fear suggested Thumm was guilty of aggravated battery; (3) arguments to the jury claiming witness Steinmetz was afraid of Thumm; (4) mischaracterization of evidence about a witness's admission of participation in the attack; (5) use of inflammatory words while arguing that Thumm would not "let a kill go without tasting blood"; and (6) descriptions of the scene of the crime alleging Thumm used beer bottles as weapons during the altercation. Although Thumm raised the over-arching issue of prosecutorial misconduct on direct appeal, each of the six instances in the post-conviction petition are new and different instances of the prosecutor's alleged misconduct.

Thumm has made no showing that the first five instances of misconduct were unknown and could not have reasonably been known during the direct appeal, so these claims of prosecutorial misconduct are waived for purposes of the post-conviction petition.[2] *Raudebaugh v. State*, 135 Idaho 602, 606, 21 P.3d 924, 928 (2001) ("It is well established that applicants for post-conviction relief are not allowed to raise issues in post-conviction proceedings that could have been raised on direct appeal unless the issues were not known and could not reasonably have been known during the direct appeal."). But the sixth instance of prosecutorial misconduct in closing argument, Thumm argues, could not be raised on direct appeal, as the fingerprint report had been suppressed, and was thus not part of the record.

The State responds to this contention by citing *Greenfield v. Smith*, "[i]t is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal." 162 Idaho 246, 253, 395 P.3d 1279, 1286 (2017).

The sixth alleged error occurred in the prosecutor's description of the crime during closing argument. The prosecutor stated:

---

[2] Thumm raised three instances of prosecutorial misconduct on direct appeal about the prosecution's closing arguments: (1) the prosecutor improperly appealed to the jury's passions and prejudices by asking the jury to picture themselves as the victim, allegedly causing jurors to act upon their fears; (2) the prosecutor misstated the reasonable doubt standard by equating it to a "gut feeling" and equating the standard with everyday decisions; and (3) the prosecutor used Thumm's pre-Miranda silence to imply guilt. *See State v. Thumm*, 153 Idaho 533, 542–544, 285 P.3d 348, 357–359 (Ct. App. 2012). Each instance was dealt with by the Court of Appeals. *Id.* Appellate counsel's reference to these claims, but not the others now raised here, supports our conclusion that the failure to raise these claims was a tactical decision that cannot be second-guessed on appeal.

Vance is getting tired. Hey, give me that bottle. He needs something else to finish the job. He is getting tired. He needs something else. Give me that bottle. Hits him in the head a couple times, the forty ounce bottle. Then a beer bottle.

Thumm argues that because of the district court's suppression of the fingerprint report after its late disclosure, the prosecutor's reference to the physical evidence was improper. He also contends that the prosecutor was alone in knowing that the physical evidence did not support that Thumm had used any bottles as weapons, but chose to violate Thumm's due process right to a fair trial anyway, since the defense was unable to respond because of the court's previous warnings about references to the fingerprint report. ("I am going to advise the Defense, if you get up there and make a statement to that jury that there was absolutely no fingerprint evidence presented in this case, they didn't check for fingerprints, I will stop the closing argument right then, and I will allow the State to reopen and call its expert.").

The State responds by asserting that it was Thumm's responsibility to provide a sufficient record to support his claims on appeal and because he failed to demonstrate or argue that he could not, in the exercise of due diligence, have included the fingerprint results on direct appeal, this claim has been forfeited under Idaho Code section 19-4901(b).

> "Where a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence, this impacts a defendant's Fourteenth Amendment right to a fair trial."

*State v. Abdullah*, 158 Idaho 386, 440, 348 P.3d 1, 55 (2015) (quoting *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010)). In carrying out their duty as public officers, prosecutors must ensure that defendants receive fair trials by "'guard[ing] against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced.'" *Id.* (quoting *State v. Irwin*, 9 Idaho 35, 43–44, 71 P. 608, 610–11 (1903)).

Since the alleged prosecutorial misconduct was not objected to at trial, Idaho appellate courts may only order reversal if the defendant can demonstrate that the violation qualifies as fundamental error. *Perry*, 150 Idaho at 227, 245 P.3d at 979. In *Perry*, this Court also noted that the appellant may still file a "petition for post-conviction relief proceedings in order to ascertain whether defense counsel's failure to object to the alleged error constituted ineffective assistance of counsel." *Id.* at n.7. A review for fundamental error includes a three-prong inquiry with the burden resting on the appellant to show that the alleged error:

24

(1) Violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id.* at 228, 245 P.3d at 980.

To be granted post-conviction relief on an issue that could have been raised on direct appeal, but was not, the appellant must show, by substantial factual showing by affidavit, deposition, or otherwise, that the asserted claim for relief raises a "substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier." *Stuart v. State*, 118 Idaho 865, 889, 801 P.2d 1216, 1241 (1990).

There were no objections at trial to the closing argument referencing the use of bottles as weapons. As the district court noted, even without Bond's contemporaneous objections to the prosecutor's misconduct at trial, appellate counsel could have raised the issue on appeal. In his brief, Thumm presented no evidence that the issue could not, in the exercise of due diligence, have been presented earlier. Instead, he conclusively states, in a footnote, that the prosecutorial misconduct could not have been raised on appeal because the fingerprint report was not part of the record. However improper the statement may have been, Thumm could have raised this issue on direct appeal, based on the very exclusion of the fingerprint report.

Alternatively, even if this Court were to assume error, it can also conclude, beyond a reasonable doubt, that without the comment by the prosecutor, the outcome of the trial would have been the same. Even so, this claim has been waived for failure to raise the issue on direct appeal.

## D.    Cumulative Error

Thumm appears to argue, by citing the cumulative error standard, that the accumulation of errors during trial, in the aggregate, were enough to have warranted a new trial. The intent may have been to argue that even if this Court were to determine that the errors listed above are not fundamental and/or are harmless, they are still errors and must be considered under the doctrine of cumulative error. ("[Thumm] raises many errors with the first two being the most significant and the rest having a more cumulative effect."). Except for the brief reference to the doctrine in the "standard of review" section of his brief, Thumm failed to provide any specific

argument about how the errors, when viewed altogether, produced a prejudicial effect, entitling him to relief. Thus, this argument can be summarily rejected.

Even if we were to consider this argument under the doctrine of cumulative error, a necessary predicate to a finding of cumulative error is a finding of more than one error. *Perry*, 150 Idaho at 230, 245 P.3d at 982. Thumm has failed to assert errors sufficient to invoke the doctrine of cumulative error. Even if some of the alleged errors were found to have existed at trial, these unobjected-to errors do not rise to the level of fundamental error.

## VI. CONCLUSION

For all these reasons, we affirm the district court's granting of summary disposition of all of Thumm's claims for post-conviction relief.

Chief Justice BURDICK, Justices BRODY, STEGNER and HORTON, CONCUR.