**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49703**

JORGE E. RODRIQUEZ,         )
            )
     **Plaintiff-Appellant,**    )
            )    **Boise, November 2022 Term**
v.                 )
            )    **Opinion Filed: February 10, 2023**
**STATE OF IDAHO,**       )
            )    **Melanie Gagnepain, Clerk**
     **Defendant-Respondent,**   )
            )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Boise County. Samuel A. Hoagland, District Judge.

The district court judgment is <u>affirmed,</u>

Jorge E. Rodriquez, Pro Se Appellant.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent.

---

BEVAN, Chief Justice.

      This case comes to the Court on a petition for review from the Idaho Court of Appeals. Jorge Rodriquez was convicted of domestic battery with traumatic injury in the presence of a child. His first trial ended with a hung jury. In the second trial, the jury found Rodriquez guilty of the charge. The district court sentenced Rodriquez to eighteen years, with eight years determinate. Rodriquez directly appealed his conviction, and the Idaho Court of Appeals affirmed. Rodriquez then petitioned for post-conviction relief alleging ineffective assistance of counsel, prosecutorial misconduct, and the denial of his right to a fair trial following various rulings from the district court. After reviewing his petition, and several dispositive filings, the district court served Rodriquez with a notice of intent to dismiss on October 6, 2020. Rodriquez amended his petition the next day, and the district court served Rodriquez with its second notice of intent to dismiss on October 15, 2020. Rodriquez filed a supplemental brief five days after his response was due. The district court dismissed the petition after concluding Rodriquez failed to timely respond. Rodriquez

1

appealed to the Idaho Court of Appeals, which affirmed. Rodriquez then petitioned for review to this Court, which was granted. For the reasons discussed below, the district court's judgment summarily dismissing Rodriquez's petition is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Rodriquez's petition for post-conviction relief relates to a criminal conviction in 2016. Rodriquez was convicted of one count of domestic battery with traumatic injury in the presence of a child following an incident on April 17, 2016, in which he battered his wife, A.R., first while she was breastfeeding their infant and again while the infant was in the adjacent room.

Robert Chastain was Rodriquez's first attorney, but at the May 23, 2016 preliminary hearing, Bethany Haase represented him. At the preliminary hearing, the State called A.R. as a witness. A.R. testified that on April 17, 2016, she was breastfeeding their infant daughter when she and Rodriquez argued. She testified that Rodriquez struck her legs while she was feeding the child and later punched her in the face and broke her nose while the child was in another room. On cross-examination, A.R. testified she and Rodriquez had marital problems and that she had hit Rodriquez on prior occasions. A.R. admitted that before testifying at the preliminary hearing, she had recanted her claim to the prosecuting attorney and had instead claimed she sustained her injuries from an argument where she was trying to grab his phone and the phone hit her in the nose. The case was bound over to district court following the preliminary hearing.

On February 14, 2017, about nine months after the preliminary hearing, William Schwartz substituted in as conflict counsel for Chastain. Trial was set for April 6, 2017. On March 9, 2017, during a pretrial conference, Schwartz told the district court that Rodriquez no longer wanted Schwartz to represent him. Rodriquez requested two to three more months to obtain a new attorney. The State argued it would object to another continuance, and Rodriquez had not filed a motion for a continuance or filed a request for substitution of counsel. As a result, the district court explained that Rodriquez needed to file a written motion setting forth his request because there were insufficient facts showing a breakdown in communication such that Schwartz could not continue to represent him.

The district court gave Rodriquez four choices: (1) file a motion setting forth specific facts seeking substitution of counsel, (2) meet with Schwartz and attempt to work out differences, (3) hire a new lawyer at his own expense, or (4) represent himself at trial. About a week later, a second

2

hearing was held, and Schwartz informed the court that since he had been assigned to the case, he had adequate opportunity to meet with Rodriquez and was fully prepared for trial. Schwartz detailed the meetings and phone calls he had with Rodriquez and articulated his opinion that Rodriquez's case was straightforward, and he was ready to proceed. Rodriquez reiterated his dissatisfaction with Schwartz and explained that he did not think Schwartz spent enough time preparing for his case. The district court again gave Rodriquez the option to continue with Schwartz, represent himself, or obtain a new attorney at his own expense. The court also continued the trial to May 4, 2017, with a pretrial set for April 13. The district court explained to Rodriquez he had until March 24 to make his decision. Rodriquez decided to continue with Schwartz.

At the pretrial hearing on April 13, the parties argued previously submitted motions in limine. Rodriquez then tried to get the district court to look at a letter of recantation that A.R. allegedly wrote. Schwartz conveyed he thought it improper for the court to review, and Schwartz informed the court that he would impeach A.R. at trial should she testify contrary to the letter. Following additional dispositive motions and rulings, the trial began on May 4, 2017, and resulted in a hung jury on May 5, 2017. The State asked to proceed with a second trial, which was set for July 27, 2017. Schwartz was Rodriquez's attorney for both trials.

During the second trial, the prosecutor described the first version of events that A.R. told law enforcement. The prosecutor then explained that A.R. had a second version of events where she sustained her injuries from a cell phone hitting her in the nose. He stated, "Fear, ladies and gentlemen, it suffocates logic. Fear takes power away from the fearful, but empowers the feared." The district court interrupted and reminded counsel to stick to facts. Following the prosecutor's direct examination, Schwartz cross-examined A.R. about the alternate story she told the prosecutor and her motivation to lie.

At trial, prosecutors called nine witnesses, including A.R., two police officers, A.R.'s parents, and an orthopedic surgeon who testified as an expert witness. After the presentation of evidence, Schwartz moved for a judgment of acquittal under Idaho Criminal Rule 29(b), which was denied. Following the jury's deliberation, Rodriquez was found guilty. After trial, Rodriquez's bond was increased to $250,000, and he was taken into custody. The district court ordered a presentence investigation (PSI) along with an Idaho Code section 19-2524 domestic violence evaluation (DVE).

On August 10, 2017, a hearing was held at A.R.'s request to dismiss the no contact order. The district court denied her request, pending the results of the PSI and DVE. The same day, Schwartz, on Rodriquez's behalf, filed a motion for judgment of acquittal under Idaho Criminal Rule 29(c)(1). On September 14, 2017, a second hearing was held on Rodriquez's motion to reduce bond or release him on his own recognizance. His request for a DVE was also discussed. The district court noted at that hearing that a DVE was already requested, "I can see here a July 28th order signed by Judge Hoff. It does request a domestic violence evaluation." The prosecutor objected to reducing bond, arguing that Rodriquez had previously pleaded guilty to or been convicted of twelve violent crimes. The district court denied Rodriquez's motion. A few days later, the State objected to the Rule 29 motion filed by Rodriquez. The district court heard oral arguments on the motion before denying it. At sentencing, Rodriquez was sentenced to eighteen years in prison, with eight years determinate.

## B. Procedural History

Following his conviction, Rodriquez filed a Rule 35 motion and a direct appeal. The Rule 35 motion seeking leniency was later denied. On appeal, Rodriquez argued the trial court erred in allowing the admission of testimony from A.R.'s mother under Idaho Rule of Evidence 803(4) and the error was not harmless. The Court of Appeals, in an unpublished decision, affirmed Rodriquez's conviction because the record demonstrated beyond a reasonable doubt that the complained of error did not contribute to the verdict obtained. *State v. Rodriquez*, 2019 WL 3021127, at *1 (Ct. App. 2019) (unpublished).

On January 27, 2020, Rodriquez filed an eighty-two-page verified pro se petition for post-conviction relief along with nineteen exhibits, asserting several claims including ineffective assistance of trial and appellate counsel, judicial error, prosecutorial misconduct, and constitutional violations. On March 18, 2020, Rodriquez filed an affidavit allegedly from his father, Jorge Rodriquez, Sr., though this affidavit was unacknowledged by the district court. On May 15, 2020, Rodriquez filed two more affidavits purportedly from his sisters, Maria Rodriquez and Isabelle Geary. All three affidavits allege to have personal knowledge of A.R.'s propensity for violence and her prior physical assaults on Rodriquez.

Rodriquez filed several pro se motions and eventually a motion requesting the appointment of counsel. On June 15, 2020, the district court appointed counsel and denied the other pro se motions. Soon after, Rodriquez requested a different attorney, and his court-appointed attorney

4

filed a request to withdraw. The request to withdraw was granted and the district court denied Rodriquez's request for a different court-appointed attorney at the same time, leaving Rodriquez free to hire his own counsel. On August 5, 2020, Rodriquez filed a notice of intent to proceed as a pro se litigant, a motion requesting an enlargement of time for the deadlines in the scheduling order, a motion requesting full discovery, transcripts, and access to a computer for legal research.

On October 5, 2020, the district court filed a seventy-five-page notice of intent to dismiss. Before service was complete, Rodriquez filed an amended verified petition for post-conviction relief. Days later the district court filed a second notice of intent to dismiss which incorporated the original points from its first notice and the new claims raised in the amended petition. Service was completed through certified mail on October 15, 2020. On November 9, 2020, (under the mailbox rule) Rodriquez filed a supplemental brief along with a supplemental affidavit. The district court dismissed Rodriquez's amended petition for post-conviction relief on November 16, 2020, citing his failure to respond within twenty days. The district court also stated that for the reasons set forth in its two notices of intent to dismiss, which included all claims in the original and amended petitions, Rodriquez's petition for post-conviction relief was dismissed.

Rodriquez appealed the dismissal of his post-conviction relief petition to the Idaho Court of Appeals, which affirmed the district court's dismissal. *State v. Rodriquez*, No. 48520, 2022 WL 470815 (Feb. 16, 2022). The Court of Appeals held that Rodriquez failed to respond within twenty days and failed to raise genuine issues of material fact in his petitions. *Id.* at *7. Rodriquez timely petitioned for review, which this Court granted.

## II. ISSUES PRESENTED

1. Whether the district court made procedural errors in dismissing Rodriquez's post-conviction petition before the State answered and without considering his supplemental brief and supplemental affidavit?

2. Whether Rodriquez's petition and amended petition for post-conviction relief created a genuine dispute of material fact sufficient to preclude summary dismissal of his ineffective assistance of counsel claims?

## III. STANDARDS OF REVIEW

When addressing a petition for review, this Court will give "serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *Marr v. State*, 163 Idaho 33, 36, 408 P.3d 31, 34 (2017) (quoting *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014)).

"A petition for post-conviction relief initiates a civil, rather than criminal, proceeding." *Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019) (citing *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). Like the plaintiff in any civil action, the applicant must prove, by a preponderance of the evidence, the allegations upon which the request is based. *State v. Abdullah*, 158 Idaho 386, 417, 348 P.3d 1, 32 (2015) (citing I.C. § 19-4907). The application for post-conviction relief differs from a complaint in an ordinary civil action in that it must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *Id.* (citing *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002)). The application must present admissible evidence supporting its allegations, or it will be subject to dismissal. I.C. § 19-4903.

Idaho Code section 19-4906 authorizes summary dismissal of a post-conviction petition. Summary dismissal of an application is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. "Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested." *Thumm*, 165 Idaho at 412, 447 P.3d at 860 (quoting *Yakovac*, 145 Idaho at 444, 180 P.3d at 483).

> On review of a dismissal of a post-conviction relief application without an evidentiary hearing, the Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.

*Id.* Inferences should be liberally construed in favor of the petitioner. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). "Essentially, the task of this Court 'is to determine whether the appellant has alleged facts in his petition that if true, would entitle him to relief.'" *Thumm*, 165 Idaho at 412, 447 P.3d at 860 (quoting *Charboneau*, 140 Idaho at 792, 102 P.3d at 1111).

## IV. ANALYSIS

### A. The district court erred in concluding Rodriquez did not timely submit his supplemental materials.

Rodriquez claims two procedural errors: (1) that the district court erred by dismissing his amended petition for post-conviction relief before the State filed an answer; and (2) that the district court erred when it summarily dismissed the petition without considering Rodriquez's

supplemental materials and without giving him twenty days to respond to the court's second notice of intent to dismiss.

   1. *The State was not required to answer Rodriquez's amended petition for post-conviction relief under Idaho Code section 19-4906.*

Rodriquez challenges the district court's decision to dismiss his amended petition for post-conviction relief before the State filed an answer. The State answered Rodriquez's first petition for post-conviction relief, albeit late, and later moved the district court to summarily dismiss the petition. Thus, the issue on appeal centers on Rodriquez's amended petition.

"[I]f the petitioner's alleged facts are uncontroverted by the State. . . [they] must be regarded as true." *Phillips v. State*, 108 Idaho 405, 407, 700 P.2d 27, 29 (1985). "However, summary dismissal may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law." *Yakovac*, 145 Idaho at 444, 180 P.3d at 483. Because a "petition for post-conviction relief is a civil proceeding, [it is] governed by the Idaho Rules of Civil Procedure." *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009) (quoting *Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008)). Under Idaho Rule of Civil Procedure 15(a), a "petitioner cannot amend his petition once a responsive pleading has been filed without permission of the court or written permission of the State." *Schultz v. State*, 151 Idaho 383, 387, 256 P.3d 791, 795 (Ct. App. 2011). After a respondent files a responsive pleading, the petitioner must request leave to file an amended petition. *See Cole v. State*, 135 Idaho 107, 111, 15 P.3d 820, 824 (2000) ("a motion for leave to file an amended petition was required before it was necessary for the district judge to consider the amended petition").

The district court filed a scheduling order on June 15, 2020. In that order, the court granted "Petitioner one opportunity to amend the [p]etition for [p]ost-[c]onviction [r]elief. The amended petition must be filed no later than 60 days from the date of this order." The scheduling order also "directed [the State] to respond to the Amended Petition by [a]nswer or by [m]otion within 30 days after the Petitioner files an amended petition." Even so, Rodriquez did not file his amended petition within sixty days of the district court's scheduling order; he filed it on October 6, 2020—nearly four months later. And Rodriquez did not request leave from the district court before filing his amended petition for post-conviction relief outside the deadline the court established. On August

5, 2020, Rodriquez filed a motion requesting enlargement of time and explained he "has not had an adequate opportunity to gather the necessary material needed to supplement or amend the petition and needs additional time to due [sic] so," but this motion was denied.

Since Rodriquez neither sought nor received permission from the district court to amend his initial petition, the district court was not required to address it, and the State was not required to respond to it. *See Cole*, 135 Idaho at 111, 15 P.3d at 824. Even so, the district court acknowledged the new arguments in the amended petition in its second notice of intent to dismiss. Still, while Idaho Code section 19-4906(a) directs the State to respond to the initial application for post-conviction relief by answer or motion within thirty days after the docketing of the application, the statute is silent as to the State's obligation to file an answer to an amended pleading. An answer to an amended petition is required if the district court granted leave to amend.

Within eight days after Rodriquez filed his amended petition, the district court filed its second notice of intent to dismiss. Under Idaho Code section 19-4906, a petition for post-conviction relief can be summarily dismissed "pursuant to motion of a party *or* upon the trial court's own initiative." *Yakovac*, 145 Idaho at 444, 180 P.3d at 483 (emphasis added). Once the district court provided its notice of intent to summarily dismiss Rodriquez's petition on its own initiative, the State had no obligation to submit an amended answer, even if one were required. For these reasons, we hold that the district court did not err in summarily dismissing Rodriquez's amended petition before the State answered it.

In a related matter, Rodriquez claims that the State failed to provide portions of the record material to questions he raised in his petition. Rodriquez cites *Roman v. State* to support the proposition that the petitioner is not responsible for any missing portion of the record. However, *Roman* actually reached the opposite result:

> If the state does not file all relevant portions of the transcript in compliance with this statute, the applicant may, by motion to the court, compel the state to do so. However, we do not view this statute as relieving an applicant of the consequence of failing to place in evidence a transcript essential to prove the applicant's claim where, as here, the applicant made no effort to compel action by the state or to otherwise arrange for the filing of the transcript.

125 Idaho 644, 648, n.3, 873 P.2d 898, 902, n.3 (Ct. App. 1994).

In March 2020, Rodriquez filed a motion to strike the State's answer, writing "Petitioner filed a timely Petition for Post-Conviction Relief with the required portions of the records, transcripts and evidentiary documents and other admissable [sic] evidence exhibits as mandated

by statute." Rodriquez then argued that the prosecutor representing the State failed to "properly prepare an Answer as required by the Rules and Statute, he failed to file any form of relevant portions of the record with his Answer, which Petitioner seeks the court to compel the new Prosecutor to provide the record that supports his alleged Answers." This "motion to compel" appears in Rodriquez's motion to strike, and it is the only time Rodriquez makes such a motion; however, it is not a request to compel portions of the record material to the questions Rodriquez raised in his petition for post-conviction relief. Instead, this was a motion to compel the State to provide portions of the record that supported the State's own answer. The district court denied it and all of Rodriquez's pending motions on June 15, 2020 when it issued the scheduling order because the court appointed counsel at Rodriquez's request. Rodriquez never moved to compel the State to provide portions of the record related to questions he raised in his petition, and he failed to identify what portions of the record were missing. Accordingly, we find no error.

2. *Rodriquez timely responded to the district court's motion of intent to dismiss.*

After the district court filed its second notice of intent to dismiss, Rodriquez had twenty days to respond under Idaho Code section 19-4906(b), which provides:

> When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply within 20 days to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or, direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a material issue of fact.

Since the district court's notice was served by mail, Idaho Rule of Civil Procedure 2.2(c) is also applicable: "When a party may or must act within a specified time after service and service is made by mail, 3 days are added to the specified time." The Rule also explains that when computing time, "exclude the day of the event that triggers the period[,]" I.R.C.P. 2.2(a)(1)(A), and "[i]nclude the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." I.R.C.P. 2.2(a)(1)(C).

On appeal, Rodriquez claims he timely filed his supplemental brief in response to the district court's notice of intent to dismiss. Specifically, Rodriquez argues that under Idaho Rule of

9

Civil Procedure 2.2(c), his brief and affidavit were filed within the allotted twenty days. The State maintains that Rodriquez responded five days after the twenty-day period ended.

Below, the district court filed its second notice of intent to dismiss on October 15, 2020, with instructions to Rodriquez to respond within twenty days. Rodriquez deposited his response into the prison mailbox system on November 9, 2020. The court received his response and file stamped it on November 13, 2020. Soon after, on November 16, 2020, the district court entered its order dismissing Rodriquez's petitions for post-conviction relief, explaining, "Any responsive materials should have been filed no later than November 4, 2020 (20 days after the second notice of intent to dismiss). Petitioner filed responsive materials on November 9, 2020 (under the mailbox rule). Therefore, the material is untimely and will not be considered." We conclude that the district court erred in its calculations and application of Rule 2.2.

Rodriquez argues in his petition for review that because of the three additional days allowed under Rule 2.2, he had until November 7—not November 4—to file his response. However,

> because November 7 was on a Saturday, November 8 was Sunday wherein the computing time continued running and November 9 was on Monday wherein the day for filing was due which makes Rodriquez' materials right on time, filed on the 9th day of November, 2020, in accordance with I.R.C.P. (a)(1)(C).

This is the correct analysis. From the date the district court submitted its second notice of intent to dismiss, Rodriquez's petition would have ordinarily been due on November 4th. Yet he received the notice of intent to dismiss by mail, which entitled him to three additional days to respond under Idaho Rule of Civil Procedure 2.2(c) (if "service is made by mail, 3 days are added to the specified time."). As a result, Rodriquez had until November 7, 2020, to submit his responsive materials. November 7th was a Saturday, which triggered a separate provision of Rule 2.2. Under subsection (a)(1)(C), because the due date for Rodriquez's responsive materials fell on a Saturday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." I.R.C.P. 2.2(a)(1)(C). Thus, the rule gave Rodriquez until Monday to file, which was November 9th. Inasmuch as Rodriquez submitted his response to the prison mail system on November 9th, it was timely.

In *Munson v. State*, 128 Idaho 639, 642, 917 P.2d 796, 799 (1996), this Court expressly held that the prison mailbox system applies to pro se inmates seeking post-conviction relief. The Court explained, "pro se inmates [lose] control over their petitions once the petitions were

10

delivered to prison officials, rather than when the petitions were voluntarily placed in the United States mail or when the petitions were delivered to the court clerk." *Id.* at 643, 917 P.2d at 800. Rodriquez's petition should have been considered filed on November 9th—the day he placed the brief in the prison mail system—not November 13th, the day the district court received it.

To be sure, Rodriquez benefited from a combination of several rules of civil procedure, as well as the prison mailbox rule, to extend the time in which he had to respond. Even so, nothing in the rules suggests he is prohibited from doing so. For these reasons, the district court erred in concluding Rodriquez failed to timely respond to the court's second notice of its intent to dismiss.

**B.      Summary dismissal was still proper because Rodriquez failed to raise a genuine question of material fact on his claims alleging ineffective assistance of counsel.**

As a threshold matter, while we hold that the district court erred in concluding Rodriquez failed to timely respond to the court's notice of intent to dismiss, remand to resolve this issue is unnecessary because, as discussed below, nothing in Rodriquez's supplemental materials would have changed the outcome of his case. *See, e.g.*, *Idaho v. Mummert*, 98 Idaho 452, 455, 566 P.2d 1110, 1113 (1977) (explaining in the context of probation violations that remand was not necessary if the district court erred when it was clear from the record that the court correctly found other violations warranted revocation of probation); *Stillwell v. State*, 124 Idaho 366, 370, 859 P.2d 964, 968 (Ct. App. 1993) (declining to remand a petition for post-conviction relief when the petitioner showed a right to a due process hearing but failed to show he would be entitled to relief even if deprivation of right to due process occurred).

Rodriquez's supplemental materials reassert the same allegations raised in his first and amended petitions for post-conviction relief and failed to address the defects the district court identified in its first and second notice of intent to dismiss. While the district court should have considered Rodriquez's supplemental materials, because those materials failed to articulate any reason why the court should not dismiss the petition, we cannot conclude that the outcome of his post-conviction petition would have been any different if it had. *See Nelson v. Evans*, __ Idaho __, 517 P.3d 816, 830 (2022) ("We decline to remand the case for the magistrate court to do what we can do now on appeal—dismiss this case."). For these reasons, we decline to remand, and we turn to the merits of Rodriquez's argument.

Rodriquez has raised multiple ineffective assistance of counsel allegations, including his attorney's failure to: (1) interview, subpoena, and call several witnesses at trial; (2) present

11

evidence that the victim was the initial aggressor; (3) cross-examine the victim about her propensity for violence; (4) present a claim of self-defense; and (5) raise the issue that he had not undergone a previously ordered DVE.[1] The district court dismissed Rodriquez's petition, concluding Rodriquez's claims did not raise a genuine dispute of material fact. We affirm the district court's decision.

1. *Whether counsel's failure to interview, subpoena, and call witnesses at trial rises to the level of ineffective assistance of counsel.*

Rodriquez first claims that testimony from his sisters, Isabelle Geary and Maria Rodriquez, and father, Jorge Rodriquez, Sr., would have contradicted the State's evidence, which would have affected the outcome of his trial. Rodriquez also argues that his attorney's refusal to investigate these witnesses prejudiced his case, resulting in an unfair trial.

"This Court employs the *Strickland* two-prong test to determine whether a defendant in a criminal case received effective assistance of counsel." *Thumm v. State*, 165 Idaho 405, 412–13, 447 P.3d 853, 860–61 (2019) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, an applicant for post-conviction relief must demonstrate: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 669. "These prongs are known more precisely as (1) deficient performance and (2) resulting prejudice." *Thumm*, 165 Idaho at 413, 447 P.3d at 861 (citing *Strickland*, 466 U.S. at 687).

When evaluating an ineffective assistance of counsel claim, this Court will not second-guess strategic and tactical decisions, and such decisions cannot support post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review. *Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000). "There is a strong presumption that counsel's performance falls within the

---

[1] In his petition for review, Rodriquez raises a series of new arguments that were not part of his initial appeal of his post-conviction relief case as heard by the Court of Appeals, including juror bias and constructive denial of counsel. These issues are not properly before us and we do not consider them. Rodriquez also sets out on appeal as a separate issue that the district court erred by dismissing his petition for post-conviction relief without affording him an evidentiary hearing, incorporating this claim in his brief to argue his pleadings and evidence raised a genuine question of material fact that should have entitled him to an evidentiary hearing. Thus, we consider this issue in the context of whether any of his claims raise a genuine dispute of material fact. *See Workman v. State*, 144 Idaho 518, 523, 164 P.3d 798, 803 (2007) (citing *Gilpin-Grubb v. State*, 138 Idaho 76, 80, 57 P.3d 787, 791 (2002) ("On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.")).

'wide range of professional assistance.'" *State v. Hairston*, 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999) (quoting *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988) (internal quotations omitted)).

Rodriquez submitted an affidavit from Jorge Rodriquez, Sr., and affidavits from Isabelle Geary and Maria Rodriquez. Rodriquez also submitted email correspondence between himself and his attorney, which he claims proves his attorney's ineffective assistance.

Beginning with Isabelle's affidavit, she stated, "I have knowledge of [A.R.'s] propensity and reputation for violence towards my brother as I have viewed and witnessed video photage[2] [sic] of assults [sic] upon my brother Jorge Rodriquez." The affidavit also improperly referenced "cases of relevance," and cited *Marr v. State*, 163 Idaho 33, 408 P.3d 31 (2017) to explain that a defendant can offer reputation or opinion evidence about the victim's character trait. Rodriquez's second sister, Maria, provided a nearly identical statement, including spelling errors, writing, "I have knowledge of [A.R.'s] propensity for violence towards my brother as I have viewed video photage [sic] of [A.R.'s] physical assults [sic] upon my brother Jorge Rodriquez in the past and have spoke [sic] to [A.R.] about it." Her affidavit also inappropriately identified "cases of reference," with a citation to *Marr v. State* and *State v. Hernandez*, 133 Idaho 576, 990 P.2d 742 (Ct. App. 1999).

In support of his claim that his attorney's performance was deficient, Rodriquez submitted an "evidentiary record" of email correspondence between him and his attorney. His first email, from March 23, 2017, stated that Rodriquez had video evidence that would "show not only how [A.R.] was the aggressor in our domestic disputes but also 'highly' create reasonable doubt within the case." His attorney responded, explaining:

> Petersen and Hines [the State's witnesses] have been disclosed for a long time. It is only the broadness of their testimony as well as additional exhibits that I can challenge. Prejudice can be brought out but does not disqualify them as witnesses.
>
> You only suggested an additional witness after Pre-Trial. First, it's hard to protest late disclosure if we do the same. Secondly, we can get the evidence in through [A.R.]. I do not know this person or what they will say. Way too dangerous for no additional benefit. Now. [sic] I need to get back to work on meaningful problems.

---

[2] Both Isabelle's and Maria's affidavits contain the same misspellings of "footage." The district court also noted the affidavits were in the same handwriting and both appeared to be written by Rodriquez. The affidavit from Rodriquez, Sr., though not evaluated by the district court, also appears to suffer from the same problem. All three affidavits also misspell the word "assault" in the same way.

In the district court's first notice of intent to dismiss, it addressed the affidavits from Rodriquez's sisters, explaining that "[b]oth individuals state they have knowledge regarding the Victim's 'propensity' toward violence against Petitioner and have video footage of the Victim's prior physical assaults on the Petitioner." The district court also explained in a footnote:

> The affidavits are virtually identical and appear to be handwritten by the Petitioner. A comparison of the affidavits to Petitioner's other handwritten filings makes the [c]ourt seriously question their authenticity. In addition, the affidavits contain argument and case law, which is improper. However, for purposes of this instant notice, the [c]ourt will consider them as true.

Aside from the veracity of the witnesses' testimony, the district court clarified that Rodriquez's attorney had employed a rational trial strategy by not calling witnesses who would open the door to his prior conduct and prior convictions—both of which Rodriquez explicitly conveyed in his amended petition that he did not want introduced. The record shows that Rodriquez has an extensive criminal history with twelve prior convictions for violent offenses.

Rodriquez bears the burden under *Strickland* of demonstrating his attorney's performance fell below an objective standard of reasonableness and that, but for the attorney's errors, the result would have been different. With that standard in mind, Rodriquez points to nothing on appeal to suggest his attorney's decision not to call Isabelle or Maria was due to inadequate preparation or ignorance of the law. Likewise, Rodriquez's supplemental brief below made only a conclusory claim that his attorney's failure to call the witnesses was because of a "lack of adequate preparation, other shortcomings and lack of sound strategy[.]" Indeed, the email correspondence Rodriquez submitted with his petition supports the district court's alternative conclusion.

His attorney explained it was not to Rodriquez's benefit to disclose or then call additional witnesses after pretrial because it would limit his ability to challenge the State's efforts to call additional witnesses who had been disclosed late. The attorney also explained that the information Rodriquez wanted to get in through his sisters could come in through cross-examination of A.R. And his attorney explained that calling witnesses without being certain what they would say was too dangerous. Each rationale the attorney gave falls within the textbook definition of tactical decisions and appears to be reasonable on its face. "[Counsel's] choice of witnesses, manner of cross-examination, and lack of objection to testimony fall within the area of tactical, or strategic [ ] decisions. . ." *Dunlap v. State*, 170 Idaho 716, 516 P.3d 987, 1002 (2022) (quoting *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994)). Further, "[t]he test to determine whether failure

14

to interview witnesses constitutes a deficiency in representation is 'judged according to the significance of the evidence the witness has to offer and what other sources are available to ascertain the testimony of the witness.'" *Mitchell v. State*, 132 Idaho 274, 280, 971 P.2d 727, 733 (1998) (quoting *State v. Bingham*, 116 Idaho 415, 424, 776 P.2d 424, 433 (1989)). None of Rodriquez's proposed witnesses claimed to have witnessed the altercation that occurred on April 17, 2016, which was the date of the crime.

As a result, we conclude that Rodriquez failed to present sufficient evidence to overcome the presumption that his attorney's decision was tactical; rather, the record confirms that it was the result of trial strategy reached after weighing the advantages and disadvantages to Rodriquez. Additionally, Rodriquez did not raise a genuine issue of material fact that he was prejudiced by his attorney's decision. The district court's rationale adhered to both *Strickland* and this Court's decisions in evaluating ineffective assistance of counsel claims.

Turning briefly to Rodriquez's father's affidavit, neither the district court, the Court of Appeals, nor the State referred to the affidavit from Rodriquez, Sr. According to the affidavit of Rodriquez's father, Jorge Rodriquez Sr., he would have testified about counsel's refusal to accept evidence as well as the victim's alleged propensity for violence. The affidavit was submitted on March 18, 2020, before the affidavits from Rodriquez's sisters. Nothing in the record suggests why Isabelle and Maria's affidavits were referenced by the district court, but Rodriquez, Sr.'s, affidavit was not. That said, the first portion of Rodriquez, Sr.'s, affidavit relayed statements he heard Rodriquez's attorney make to Rodriquez, explaining,

> I could overhear Mr. Schwartz raising his voice to my son, becoming irate, using vulgar language, and being very unprofessional. After a moment, I witnessed Mr. Schwartz open the door telling my son to get out of his office and said [sic] "your evidence is not coming in, I'm done talking about the videos, now get out of my office."

This conversation is inadmissible hearsay and it falls within no applicable exception. I.R.E. 802. Rodriquez, Sr., then recounted a conflict between his son and A.R. in which he alleged that A.R. "violently assault[ed] my son for no apparent reason other than she didn't like what my son would say or how he would respond to her." There is no date in the affidavit to suggest when Rodriquez, Sr., allegedly witnessed this altercation and the statement also includes Rodriquez, Sr.'s speculation about why A.R. allegedly assaulted Rodriquez. Rodriquez, Sr., also referenced the video that Isabelle and Maria reviewed, explaining he "physically observed the video photage [sic]

15

of my son being violently assulted [sic] by A.R., as he is attempting to deflect and remove himself from the assaults[,]asking her to please stop." The affidavit concludes with the same case law to which Isabelle's and Maria's affidavits referred.

While Rodriquez correctly points out that the district court did not address this affidavit, the district court's failure to do so was harmless error. "[A] post-conviction relief proceeding is governed by the Idaho Rules of Civil Procedure[.]" *DeRushe v. State*, 146 Idaho 599, 601, 200 P.3d 1148, 1150 (2009). Under those rules, harmless error is defined as "any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Rodriquez makes no claim that the district court's failure to consider this affidavit affected his substantial rights, nor do we find that his substantial rights were affected by the district court's failure to consider it.

The first portion of the affidavit merely relayed conversations overheard by Rodriquez, Sr. The second portion of the affidavit discussed reviewing the same altercation on video that Isabelle and Maria's affidavits referenced. The district court declined to admit those affidavits because the observations were based on video evidence, and they were "virtually identical" and "appear to be handwritten by the Petitioner." Any evidence Rodriquez submitted in support of his petition for post-conviction relief, including affidavits, must be based on admissible evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136 (citing I.C. § 19-4903) ("The application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal."). Rodriquez failed to show that the affidavit from his father contained any admissible evidence or information that raised a genuine issue of material fact sufficient to preclude summary disposition of his petition. He likewise failed to show that his attorney's decision not to interview his father affected his substantial rights.

> 2. *Whether Rodriquez's attorney was ineffective for failing to present evidence the victim was the initial aggressor based on her alleged propensity for violence?*

Rodriquez maintains his attorney was ineffective because he failed to present evidence establishing A.R. was the initial aggressor and that force was necessary to repel her attack. Rodriquez argues this failure was based on ignorance of the relevant law and inadequate preparation and investigation.

Below, the district court concluded in its first notice of intent to dismiss that Rodriquez's claim failed on four grounds: (1) the evidence was inadmissible; (2) the decision not to present the

evidence was a tactical decision; (3) the evidence was presented at the preliminary hearing; and (4) the issue should have been raised on direct appeal.

The Idaho Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Under Idaho Rule of Evidence Rule 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving the person acted in conformity therewith on a particular occasion . . . ." However, in a criminal case, "a defendant may offer evidence of an alleged victim's pertinent trait of character, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" I.R.E. 404(a)(2)(B).

The district court found that the evidence contained in the proffered affidavits was not admissible because it was not (1) generally relevant, nor was it (2) specifically relevant because Rodriquez had not raised a credible claim of self-defense or alleged a sufficient factual basis of the elements of self-defense. The district court's analysis was correct on this legal question. Rodriquez's defense at trial centered on the claim that A.R. suffered an accidental injury. He never proffered any claim or evidence that, inasmuch as A.R. was the "initial aggressor," her injuries were incurred because he was reasonably acting in self-defense. In short, self-defense played *no role* in his theory of the case. Indeed, A.R.'s testimony at trial supported the "accidental injury" theory: she testified that either the injury was accidental or caused by her work environment and that she lied to a co-worker, her parents, the nurse at the doctor's office, and the police by telling them Rodriquez caused the injuries.

Rodriquez never admitted to causing any injuries to A.R. as part of his defense at trial. Even when he described the altercation in his petition for post-conviction relief, Rodriquez continued to claim that his "wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was somehow accidently struck and began to bleed." The district court explained that admitting video evidence that A.R. had allegedly battered Rodriquez on a prior occasion was irrelevant to whether Rodriquez battered A.R. on April 17, 2017. The district court noted, there was "no evidence or factual allegations showing Petitioner had a valid claim for self-defense, and even if he had, that he could show that he reasonably feared the victim and reasonably believed that the force used was necessary to repel the victim's attack."

17

Beyond this legal question, the district court concluded that the attorney's decision "not to present this evidence was clearly strategic." Citing *State v. Paz*, 118 Idaho 542, 564, 798 P.2d 1, 23 (1990) (noting the strategic risks of attacking the victim's character before the jury and the negative consequences of creating a "mini-trial" on the victim's character). This conclusion, even if the "initial aggressor" testimony was somehow relevant, is still correct.

Rodriquez wanted to admit video evidence of a prior altercation. His supplemental brief explicitly argued that he wanted to admit the video so that the jury could "draw an inference that the alleged victim acted consistently with that trait on the occasion in question and to show that she was the initial aggressor." Admitting evidence of a prior altercation to show that A.R. has a propensity for violence is exactly the type of inference we do *not* permit juries to hear. *See State v. Fox*, __ Idaho __, 517 P.3d 107, 133 (2022) (Bevan, C.J., concurring) (explaining the subtle distinction between allowing the jury to infer that evidence shows the defendant had knowledge, possession and control of controlled substances, but prohibiting the jury from using that same evidence to draw an improper inference based on propensity). "Strategic and tactical decisions will not be second guessed or serve as a basis for post-conviction relief under a claim of ineffective assistance of counsel unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review." *Pratt v. State*, 134 Idaho 581, 584, P.3d 831, 834 (2000) (citation omitted).

For these reasons, we hold that Rodriquez failed to establish error on any of the particulars set forth above.

3. *Whether counsel's failure to cross-examine the victim on her propensity for violence against Rodriquez rises to the level of ineffective assistance of counsel?*

Rodriquez next claims that defense counsel never asked A.R. whether she was the aggressor or whether she had ever been violent with or abusive to him and, thus, failed to present material facts and pertinent evidence to the jury. Rodriquez maintains that had these questions been asked, and A.R. denied being violent, Rodriquez's video evidence of A.R. allegedly assaulting him would have been admissible to impeach her. Rodriquez did not address this claim in his supplemental brief.

At trial, the State called A.R. as its first witness. A.R. testified that she was arguing with Rodriquez about his ex-girlfriend and was injured when Rodriquez's phone somehow hit her in the face. This happened when her daughter was in the house. At first, A.R. could not recall what

she told her co-workers, but admitted to lying to one co-worker because "she was upset with her husband." A.R. also testified to telling her parents that Rodriquez hit her while she was breastfeeding. A.R. testified to recanting her story that she was injured from Rodriquez hitting her and claimed instead that her injury was caused from the cell phone in some way hitting her.

Rodriquez's attorney cross-examined A.R. The attorney elicited testimony from A.R. about lying for several days after the incident. A.R. testified on cross-examination that Rodriquez's phone hit her in the head when she was trying to grab it away from him. When Rodriquez's attorney asked her why she had lied, A.R. said the prosecuting attorney "told her she could be in trouble for perjury if she did not tell the original story and that she was scared into telling the original story."

Below, the district court noted that such evidence offered to show that A.R. was the initial aggressor "would not have been admissible at trial and it was a strategic decision not to present such evidence." The court then explained that when "evaluating an ineffective assistance of counsel claim, this [c]ourt does not second-guess strategic and tactical decisions, and such decisions cannot serve as a basis for post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the law or other shortcomings capable of objective review." The district court concluded Rodriquez "failed to demonstrate deficient performance or that the outcome of his trial would have been different." We agree.

Rodriquez puts forth only a conclusory allegation that, had his attorney cross-examined A.R. on whether she was the initial aggressor, her response would have created a contradiction in the State's case. Once again, not only is this purely speculative because no one can say what her answer would have been, but there was also no relevant reason to make such an inquiry based on the defense theory at trial that A.R.'s injuries were caused by an accident. Thus, Rodriquez's after-the-fact attempt to fault his attorney's performance—based on a completely new theory of the case—is untenable.

Additionally, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness[.]" *State v. Hairston*, 133 Idaho 496, 503, 988 P.2d 1170, 1177 (1999) (citing I.R.E. 611(b); *State v. Jesser*, 95 Idaho 43, 49, 501 P.2d 727, 734 (1972)). The State's direct examination of A.R. was narrow in scope; the State questioned A.R. on why she recanted, which did not open the door to Rodriquez's attorney questioning her about being an initial aggressor on a different day. Rodriquez never put forth a

19

self-defense claim. Thus, any such questions would have been beyond the scope of the direct examination. For these reasons, we hold that Rodriquez failed to raise a genuine issue of material fact that his attorney's decision to not cross-examine A.R. about being the initial aggressor resulted from inadequate preparation, ignorance of law, or any other shortcoming that is objectively capable of review.

4. *Whether counsel's failure to present Rodriquez's claim of self-defense rises to the level of ineffective assistance of counsel?*

Next, and relatedly, Rodriquez claims his attorney failed to present his claim of self-defense and chose only to rely on A.R.'s testimony that she lied about how she received her injuries. In his supplemental briefing, Rodriquez also repeatedly alleges that self-defense is necessary to "avoid the alleged victim[']s aggressive behavior of assault's against the petitioner[.]"

The district court concluded that Rodriquez's claim that he received ineffective assistance of counsel for his attorney's failure to advance a self-defense claim failed for several reasons. First, the district court explained that Rodriquez never put forth any evidence portraying A.R. as the aggressor, based on the theory as initially explained to police the day of the encounter, that this was an "accident." Second, the district court explained that even if Rodriquez had alleged facts showing he had a potential claim for self-defense, "he has failed to demonstrate that he 'reasonably feared the victim and reasonably believed that the force used was necessary to repel the victim's attack.'" Quoting *State v. Hernandez*, 133 Idaho 576, 585, 990 P.2d 742, 751 (Ct. App. 1999). The district court concluded that Rodriquez's attorney's decision not to pursue the defense was reasonable considering Rodriquez's violent history and because there were no facts in the record to suggest he was defending himself from A.R. on the date of the battery.

Self-defense is a recognized affirmative defense to aggravated assault. *State v. Woodward*, 58 Idaho 385, 394, 74 P.2d 92, 96 (1937) (discussing self-defense in a case involving an aggravated assault); *see generally* I.C. §§ 19–201, 19–202, and 19–202A. The criminal jury instruction on self-defense, Idaho Criminal Jury Instruction 1517, explains what the defendant must prove to show he acted in self-defense:

1. The defendant must have believed that [the defendant] [another person] was in imminent danger of [death or great bodily harm] [bodily harm].

2. In addition to that belief, the defendant must have believed that the action the defendant took was necessary to save [the defendant] [another person] from the danger presented.

20

3. The circumstances must have been such that a reasonable person, under similar circumstances, would have believed that [the defendant] [another person] was in imminent danger of [death or great bodily injury] [bodily injury] and believed that the action taken was necessary.

4. The defendant must have acted only in response to that danger and not for some other motivation.

5. When there is no longer any reasonable appearance of danger, the right of (self-defense) (defense of another) ends.

ICJI 1517.

Nothing Rodriquez puts forth on appeal or that he included in either his petition or supplemental brief points to any factual support or argument to address the elements for self-defense. Rather, Rodriquez repeatedly relies on the alleged video of a prior altercation between him and A.R., claiming his "theory of self-defense [was] based on a video that was denied by two defense counsels and rejected for the appeal." As discussed in reference to his attorney's decision not to use the video to impeach A.R., this video was filmed on a different day than the day of the charges, and it is irrelevant to support a claim for self-defense on the date in question. Consistent with the standard jury instruction outlined above, a video from a different day than the battery does not lend credence to Rodriquez's claim that he believed he was in *imminent* danger on the day he battered A.R. or that he reasonably feared her.

To the contrary, he claimed he did not batter A.R. at all, which negates his effort to allege his actions were in self-defense. Again, even Rodriquez's petition for post-conviction relief alleged, "Petitioner's wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was *somehow* accidently struck and began to bleed."

As a result, we hold that Rodriquez failed to overcome the presumption that his attorney's decision not to cross-examine A.R. about her propensity for violence against Rodriquez was grounded in the nature of Rodriquez's theory at the time of trial. *See Schiermeier v. State*, ___ Idaho ___, ___, 521 P.3d 699, 703 (2022) (quoting *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010) ("Allegations contained in the application are insufficient for the granting of relief when (1) they are clearly disproved by the record of the original proceedings. . . ."). Alternatively, as noted above, how to strategically present the defense was a tactical decision for Rodriquez's counsel.

21

5. *Whether counsel's failure to raise the issue that Rodriquez had not undergone a previously ordered DVE before sentencing rises to the level of ineffective assistance of counsel?*

Rodriquez argues his attorney was ineffective for failing to have him undergo a DVE before sentencing, which violated his constitutional rights. Rodriquez maintains that the district court did not acknowledge the substance of his claims below on this issue and failed to give him a way to correct the deficiencies in his petition. As a result, Rodriquez contends these facts raise a genuine issue of material fact as to whether his attorney was ineffective and warrant an evidentiary hearing below. Rodriquez reasserted this claim in his supplemental brief, maintaining that a DVE was never completed.

In its notice of intent to dismiss, the district court concluded Rodriquez received a domestic violence evaluation before sentencing: "Mr. Schwartz, I can see here a July 28th order signed by Judge Hoff. It does request a domestic violence evaluation". That said, while the district court's reference to the July 28th order was accurate, nothing in the record suggests Rodriquez underwent the evaluation.

DVE's are governed under Idaho Code section 18-918(7) and Idaho Criminal Rule 33.3, which define the report. Under Rule 33.3:

> Persons who plead guilty or are found guilty of domestic assault, domestic battery or attempted strangulation, *may* be ordered to undergo an evaluation under Idaho Code § 18-918(7) by an evaluator approved by the Domestic Assault and Battery Evaluator Advisory Board.

I.C.R. 33 (emphasis added). The language of the rule makes clear that a DVEs is not mandatory for those who plead or are found guilty of domestic battery. Under Idaho Code section 18-918(7), the statutory provision explains it is the defendant's responsibility to make "a good faith effort to provide the completed copy of the evaluation to the court, [and] the court may consider the failure of the defendant to provide the report as an aggravating circumstance in determining an appropriate sentence." I.C. § 18-918(7).

Rodriquez claims he suffered without the critical information a DVE might have disclosed because the district court could not make an adequate assessment of him or his case without it. Rodriquez also claims the proper inference to be drawn from the absence of the DVE is that there is a reasonable probability the outcome of his sentence would have been different. Even so, there is nothing in the record which shows the district court construed the absence of the DVE against

22

Rodriquez. In fact, the court mistakenly claimed he had completed it, and thus couldn't have used an alleged "failure" to have it done against him.

On September 14, 2017, during a hearing to request a bond reduction, Rodriquez argued: "I–you know, first of all, it's my understanding that I should undergo a DV evaluation in this case. And so I'm not sure if the facility where I'm at–I'm in Ada County–if they provide this or if an outside source is to come in." As part of his argument, Rodriquez also explained, "my sentencing date, I believe, is September 27th. And that's pretty close to the date. I would need probably a little bit more time, if that was possible, *to undergo the DV evaluation on my own recognizance*." This shows Rodriquez was aware he was responsible for having the evaluation done and claimed to the judge it would be easier for him to do so if he were not incarcerated.

The district court dismissed Rodriquez's claim for ineffective assistance of counsel related to the lack of a DVE on two grounds: first the district court concluded Rodriquez already received a DVE. As discussed, this was incorrect. But the district court also concluded on an alternative basis that Rodriquez's claim of ineffective assistance failed because it was bare and conclusory. While Rodriquez challenges the district court's decision to dismiss his claim for ineffective assistance of counsel because the court incorrectly concluded the DVE had been performed, Rodriquez does not challenge the district court's alternative conclusion. "[W]hen a lower court makes a decision on alternative grounds and one or more of those grounds are not challenged on appeal, we will affirm." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016); *See, e.g.*, *Hilliard v. Murphy Land Co.*, LLC, 158 Idaho 737, 741, 351 P.3d 1195, 1199 (2015)

In his initial and amended post-conviction petitions, aside from a broad assertion that a DVE would have benefited him by "potentially changing the outcome of his sentence," Rodriquez put forth no admissible evidence to support this claim. *See Hall v. State*, 156 Idaho 125, 132, 320 P.3d 1284, 1291 (Ct. App. 2014) (holding post-conviction petition is subject to summary dismissal when claim is based on mere speculation). There is no reason, given his prior record of violence, to assume that a DVE would have been mitigating—in fact, it could likely have been aggravating.

Both below and on appeal, Rodriquez does not identify any specific information that he believes would have been in the domestic violence evaluation that was not already in the PSI. Neither does he explain how that information may have resulted in a lesser sentence from the district court. Instead, Rodriquez reiterates the argument he made throughout his post-conviction petition, claiming that a domestic violence evaluation would have revealed A.R. was the initial

aggressor, with a reputation for violence toward him, and "this would have been considered new evidence and grounds for a new trial." He also claims that the evaluation, and largely the interview[3] with A.R., would "potentially chang[e] the outcome of the defendants Motion for Judgment of Acquittal Rule 29(c) before and at the time of sentencing and potentially effect[ ] the case to appeal and post-conviction relief." Specifically, Rodriquez argues that had a "[v]ictim interview been conducted and had the interview reflected that the alleged victim was the aggressor and had a reputation for violence toward the defendant, this would have been considered new evidence and grounds for a new trial." This is both erroneous and speculative. It is erroneous because the purpose of the domestic violence evaluation is to assess the defendant and the factors contributing to the defendant's domestic violence. *See* I.C.R. 33.3(c). It is not intended as a vehicle to introduce an affirmative defense not raised at trial. It is also speculative because we have no way of knowing that any beneficial information would be in the DVE. Once again, the DVE may have been quite negative, given Rodriquez's twelve prior convictions for crimes of violence. We decline the invitation to engage in such speculation.

Thus, Rodriquez has not shown a genuine issue of material fact that there is a reasonable probability that the district court would have imposed a different sentence if a domestic violence evaluation had been conducted before sentencing. For these reasons, we hold that the district court did not err in summarily dismissing this claim as bare and conclusory.

6. *Rodriquez's argument that individual claims were not properly addressed is waived and contradicted by the record.*

Rodriquez claims that the district court erred by failing to adequately address his "individual claims" before dismissing his post-conviction action. Those individual claims are unidentifiable because Rodriquez fails to categorize the claims he contends the district court did not address, opting instead for a broad assertion that the "district court fails to acknowledge the supporting evidence, legal analysis and arguments provided, and fails to identify any deficiencies in the petitioner[']s evidence, legal analysis or arguments in which to correct any such defects." The State argues the record contradicts his assertion, citing the district court's thorough explanation given in its first and second notice of intent to dismiss, as well as the order dismissing the petition.

---

[3] There is no proof in the record that A.R. would have been interviewed as part of the DVE process.

Idaho Code section 19–4906(b) requires the court to "indicate to the parties its intention to dismiss the application and *its reasons for so doing*." (Emphasis added.) The record does not support Rodriquez's assertion that the district court failed to do this. The district court's first notice of intent to dismiss was seventy-four pages and addressed, at length, the claims Rodriquez raised. In that notice, the district court detailed twenty-six separate claims raised by Rodriquez and several additional sub-issues. In its second notice of intent to dismiss, the district court incorporated by reference its first notice to dismiss and analyzed the new claims Rodriquez raised in his amended petition. This notice was twenty-three pages long and addressed twenty-two new claims.

The district court's first and second notice of intent to dismiss provided a combined ninety-seven pages acknowledging the arguments and evidence that Rodriquez put forward in his initial and amended petition for post-conviction relief. To the extent that Rodriquez contends the district court failed to identify the deficiencies of a specific claim, he has not identified that claim. This Court will not search the record on appeal for unspecified error. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). As a result, absent citation to the record identifying the error, this argument is waived on appeal.

7. *Rodriquez's claim that the district court violated his due process rights is unsupported by the record and waived on appeal.*

Finally, Rodriquez claims the district court erred by failing to properly address his motions filed throughout the duration of his post-conviction case. He claims that the district court failed to grant or deny any of his motions, which violated his "[d]ue [p]rocess rights and [m]otion practice." As with his previous claim, this claim is contradicted by the record.

In its June 15, 2020, scheduling order, the district court dismissed all of Rodriquez's pending motions because the district court appointed counsel to Rodriquez's post-conviction case. At the time of that order, Rodriquez had filed an opposition motion to the State's request for an enlargement of time, a motion to strike the State's answer, and a motion objecting to the State's opposition to his motion to strike.

The district court then addressed a series of motions Rodriquez filed in response to its first notice of intent to dismiss, explaining, Rodriquez "filed a notice of intent to proceed as a pro se litigant, a motion requesting an enlargement of time for the deadlines in the Scheduling Order, a motion requesting full discovery, transcripts, and access to computer [sic] for legal research." In a footnote, the court determined that all those motions "are DENIED. Petitioner has failed to

demonstrate extraordinary circumstances and good cause for his motion to enlarge the deadlines in this case. He has failed to specify what additional material he needs. . . . Petitioner failed to identify the specific subject matter where discovery is requested." (Capitalization in original). The court also explained that the transcripts Rodriquez requested were readily available in the underlying court file that Rodriquez had already accessed to attach exhibits to his post-conviction petition, and that he had failed to identify why or how he needed internet legal research.

Rodriquez's failure to specifically identify the motions he claims the district court failed to address is fatal to this claim. To the extent he claims the district court did not rule on motions other than those we addressed above, this Court will not search the record for error. *Id*. Absent citation to the record identifying the error, he has waived this issue on appeal.

## V. CONCLUSION

The district court erred in concluding that Rodriquez's response to the court's second notice of intent to dismiss was not timely filed. Even so, because we conclude that none of Rodriquez's claims have merit, we affirm the district court's decision to summarily dismiss Rodriquez's petition for post-conviction relief.

Justices BRODY, STEGNER, MOELLER and ZAHN, CONCUR.